# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

HEATHER LEA SHINGLER,

      Plaintiff,

      v.                                    Case No. 2:16-cv-499-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

      Defendant.

## OPINION AND ORDER

Plaintiff Heather Lea Shingler seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court affirms the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on February 19, 2013. (R. at 176.) Plaintiff most recently worked as a leasing agent, but has not worked since 2013. (R. at 48–49.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from two severe conditions. (R. at 20.) However, the ALJ concluded that, in between her alleged onset date and her date last insured ("DLI") of September 30, 2014 ("the relevant period"), she could have performed light work with some limitations. (R. at 23.) Therefore, the ALJ denied her benefits. (R. at 29.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

B.  **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if it is such "that a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

C.  **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.  **Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff argues that the ALJ improperly discounted her treating physician's opinion and failed to consider the limiting effects of her non-severe impairments. Her arguments are unavailing.

**(1) The ALJ Properly Discounted Dr. Tuncay's Opinion**

Dr. Tuncay, Plaintiff's treating physician, submitted a post-DLI medical source statement that she claimed applied to the relevant period. She opined that Plaintiff required significant movement limitations due to Plaintiff's lower-back and knee pain as well as neck-posture limitations due to her neck and shoulder pain. (R. at 592–96.) At the hearing, a vocational expert testified that either set of limitations would render Plaintiff unemployable. (R. at 94–96.)

An ALJ usually must afford a treating physician's opinion controlling weight, but not if it is inconsistent with "substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). However, the ALJ needs to provide "specific, legitimate reasons constituting good cause" before rejecting the opinion. *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995). Here, the ALJ questioned the value of a post-DLI opinion by a doctor who only began treating plaintiff midway through the relevant period and attacked the opinion for relying only on Plaintiff's subjective complaints. (R. at 26–27.) In addition, the ALJ found some contradictions between the opinion and the objective evidence that further discredited the opinion. *Id.* In the end, the ALJ afforded the opinion "very little deference." *Id.* The ALJ provided good cause for doing so.

**(a)** *The Relevant-Period Record Fails to Corroborate Dr. Tuncay's Movement Limitations*

Plaintiff argues that the ALJ should have accepted Dr. Tuncay's opinion because the doctor stated that it applied to the relevant period. (Pl.'s Br. at 14.) However, an ALJ cannot consider a post-DLI opinion unless evidence applicable to a pre-DLI period supports that opinion's conclusions. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Here, while the relevant-period record does contain sporadic mentions of lower-back and knee pain, Plaintiff no

longer complained of such pain by the DLI. (R. at 899–900.) Furthermore, the treatments that Plaintiff underwent mostly focused on her neck and shoulder pain. (R. at 808–09.) The ALJ could thus validly dismiss the movement limitations at the outset, and she did not err in doing so.

(b)     *Dr. Tuncay's Opinion Appears to Be Based Solely on Plaintiff's Subjective Complaints*

Upon reviewing Dr. Tuncay's office records, the ALJ found that the doctor accepted Plaintiff's pain allegations at face value. (R. at 26.) An ALJ should not rely on an opinion that amounts to a mere "citation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, the ALJ focused on a March 2015 visit. There, Plaintiff saw Dr. Tuncay to "have SSI disability paperwork filled out." (R. at 710.) Dr. Tuncay noted that Plaintiff had difficulty with movement and neck posture. *Id.* However, the doctor also stated that "[symptoms] and reports of inability to do things are subjective." (R. at 712.) While this one statement does not definitively prove that Dr. Tuncay merely recited Plaintiff's complaints, it is enough to convince a reasonable mind to accept the ALJ's conclusion.

(c)     *Dr. Tuncay's Opinion is Inconsistent with the Relevant-Period Record*

The ALJ distrusted Dr. Tuncay's claim that her opined limitations apply as far back as February 2013 when she did not begin seeing Plaintiff until after July 2013 "with the associated records noting no abnormalities." (R. at 26.) Plaintiff counters by arguing that, because Dr. Tuncay reviewed notes from the Lakeshore Bone & Joint Institute, her opinion is "consistent with the record as a whole." (Pl.'s Br. at 17.) Dr. Tuncay does not specify which Lakeshore records she reviewed, but she was likely referring to the concurrent records from February 2014 to August 2015. This, however, does not address the ALJ's concern. Furthermore, those records

4

reveal continued prescriptions for conservative treatment, as the ALJ noted elsewhere in his decision. (R. at 22.) This suggests that Plaintiff's limitations are non-disabling. *Jacoby v. Barnhart*, 93 Fed. Appx. 939, 943 (7th Cir. 2004). Lastly, a comparison of MRI results suggests that her spinal condition had not worsened much from July 2009 to February 2014. (R. at 938.) Thus, substantial evidence in the record contradicted Dr. Tuncay's opinion.

The ALJ identified other contradictions that are less convincing. For instance, the ALJ noted that Dr. Tuncay limited Plaintiff to carrying no more than five pounds despite Plaintiff admitting that she could lift ten pounds. (R. at 27.) True, Plaintiff stated that she was physically capable of lifting ten pounds, but she claimed that doing so would cause eight-out-of-ten pain. (R. at 64.) The ALJ also questioned why Dr. Tuncay did not limit Plaintiff's exposure to cigarette smoke despite limiting her exposure to a host of other pulmonary irritants. (R. at 27.) This could simply be an acknowledgement that Plaintiff smokes. These suspect reasons do not, however, detract from the other good reasons the ALJ gave for discounting Dr. Tuncay's opinion.

(d)     *The ALJ Adequately Addressed the Factors for Weighing a Medical Opinion*

Plaintiff further argues that the ALJ failed to consider factors for weighing a medical opinion described in 20 C.F.R. § 404.1527(c). (Pl.'s Br. at 17.) When a treating physician's opinion is not entitled to controlling weight, an ALJ must weigh it using factors such as "the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Elder*, 529 F.3d at 415. (internal citations omitted). An ALJ need not explicitly march through every factor, so long as her decision shows

that she "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013).

Here, the ALJ 1) noted that Dr. Tuncay was Plaintiff's treating physician, 2) mentioned that she only treated Plaintiff during part of the relevant period, 3) pointed out that her conclusions were based on Plaintiff's subjective complaints rather than on objective medical evidence, and 4) identified inconsistencies between her opinion and the record. True, the ALJ did not consider "whether the physician specializes in the medical conditions at issue," but Dr. Tuncay does not appear to be a specialist, so this factor was irrelevant. Moreover, the ALJ's reasons for discounting the doctor's opinion touched upon most of the other factors.

Plaintiff attempts to salvage her argument by noting that Dr. Tuncay "was the most qualified physician to render an opinion." (Pl.'s Br. at 18.) But a treating physician's opinion is not entitled to absolute deference. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). An ALJ may discount it for valid reasons, and the ALJ did so here.

**(2)     The ALJ Properly Analyzed Plaintiff's Neck and Shoulder Pain**

Plaintiff argues that the ALJ committed multiple errors that stemmed from the ALJ's failure to classify Plaintiff's neck and shoulder pain as severe impairments at step two. But step two is merely a screening device for frivolous claims: so long as the ALJ finds at least one severe impairment, she must continue to step three. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). Any error in classifying an impairment as non-severe is therefore harmless unless the ALJ found no severe impairments or failed to consider all impairments in her residual functional capacity ("RFC") analysis. *Id.* at 649. Plaintiff argues that the ALJ indeed failed to consider the limiting effects of her neck and shoulder pain, but the ALJ properly discounted Plaintiff's alleged

6

limitations by pointing to her conservative treatment, which seemed to help, and the fact that she was non-compliant with physical therapy. The first two reasons support the ALJ's decision.

(a) *Plaintiff's Neck-Pain Treatment Was Largely Conservative During the Relevant Period*

Throughout the relevant period, Plaintiff's treatments for her neck pain consisted of medication, epidural steroid injection ("ESI") treatments and physical therapy. (R. at 22.) Her nurse practitioner described these as "conservative options." (R. at 400.) This regimen implies that Plaintiff's impairments, at least during the relevant period, had not reached disabling status. *Jacoby*, 93 Fed. Appx. at 943. The ALJ noted that the ESIs offered Plaintiff relief. (R. at 22.) Plaintiff disputes this, and the record is inconsistent, but some entries suggest that the ESIs were effective. For instance, one entry states that an ESI given in February 2013 "did improve the pain 100% for 6 months." (R. at 960.) Moreover, MRI results from February 2014 were similar to results from five years prior. (R. at 938.) The ALJ weighed this evidence and decided that the record did not support Plaintiff's limitations as alleged. This Court will not disturb this analysis.

(b) *The ALJ Sufficiently Discussed Plaintiff's Right-Shoulder Pain*

Plaintiff complains that the ALJ neglected to determine whether her right-shoulder pain was a severe or non-severe impairment. (Pl.'s Br. at 10.) True, the ALJ did not explicitly make such a finding. However, when a Plaintiff alleges "fatal gaps" in an ALJ's decision, courts are to "give the opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). Here, such a reading reveals that the ALJ considered Plaintiff's shoulder pain to be part of "multilevel degenerative spinal changes," which the ALJ found to be non-severe. The record reveals that Plaintiff's right-shoulder issues were similarly treated

conservatively, with shoulder injections appearing to help. (R. at 833.) The same logic used in the ALJ's neck-pain analysis applies to Plaintiff's shoulder pain.

(c) *The ALJ Mishandled Her Analysis of Plaintiff's Non-Compliance with Physical Therapy*

The ALJ criticized Plaintiff for failing to attend multiple physical-therapy sessions, finding that this non-compliance "detracted from her" neck- and shoulder-pain allegations. (R. at 22.) Specifically, the ALJ notes that the Plaintiff canceled 32 of her 37 appointments. *Id.* The ALJ misread the record. While Plaintiff did cancel 32 appointments, she attended 37, meaning she only canceled 32 of 69 appointments. (R. at 977.) More importantly, an ALJ cannot rest on a plaintiff's inconsistent treatment attendance "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits." S.S.R. 96-7p. The record reveals that Plaintiff canceled appointments due to a "really severe side effect from Levoquine," bronchitis, and a "family situation." (R. at 966-77.) Moreover, the physical therapist noted that Plaintiff could not tolerate some of the exercises meant to alleviate her right-shoulder pain. (R. at 988.) The ALJ mentioned none of this.

An RFC analysis that is "material[ly] affected" by "logical errors" is subject to remand. *Scrogham v. Colvin,* 765 F.3d 685, 700 (7th Cir. 2014). But this is not the case here. For one thing, the physical-therapy error made up only a few sentences of the ALJ's multi-page analysis of Plaintiff's neck and shoulder pain. Second, the ALJ's remaining reasons, by themselves, support her conclusions. Third, it was not until after the DLI that Plaintiff attended physical therapy to treat her right-shoulder pain. (R. at 1019.) Fourth, the ALJ validly discounted the only opinion to assign Plaintiff neck- and shoulder-pain-based limitations. In short, substantial evidence supports the ALJ's decision even after removing the brief physical-therapy discussion.

**(3)    The ALJ Did Not Ignore Plaintiff's Fibromyalgia**

Plaintiff's final argument accuses the ALJ of disregarding the effects of her fibromyalgia by ignoring the multiple diagnoses by rheumatologists. (Pl.'s Br. at 12–14). The ALJ did ignore those diagnoses, but nonetheless found Plaintiff's fibromyalgia to be an impairment, and although she declared it non-severe, a mere diagnosis does not require that the ALJ find any impairment disabling. *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007). Furthermore, only Dr. Tuncay opined that Plaintiff suffered from disabling limitations, but none were based on Plaintiff's fibromyalgia, and none survived the ALJ's analysis. Plaintiff is thus left without evidence that her fibromyalgia led to limitations more severe than what the ALJ found. This scenario cannot support a disability finding. *Schumaker v. Colvin*, 632 Fed. Appx. 861, 867–68 (7th Cir. 2015).

**E.    Conclusion**

The ALJ properly discounted Dr. Tuncay's opinion, and her otherwise valid handling of Plaintiff's neck and shoulder pain was not materially affected by the erroneous physical-therapy discussion. Accordingly, this Court affirms the ALJ's decision.

SO ORDERED on July 5, 2018.

                                            S/ Joseph S. Van Bokkelen
                                            JOSEPH S. VAN BOKKELEN
                                            UNITED STATES DISTRICT JUDGE